**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION**

| | | |
|---|---|---|
| MOISES ANTONIO | § | |
| GUTIERREZ-DE LA CRUZ and | § | |
| RAMIRO CASILLAS-SANCHEZ, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | No. 6:20-cv-0129 |
| v. | § | |
| | § | Civil Action |
| FELIX VENEGAS, SR., | § | |
| FELIX VENEGAS, JR., | § | Jury Demanded |
| GENESIS VENEGAS SALMON, and | § | |
| VENEGAS CONSTRUCTION, LLC, | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

1.      Plaintiffs Moises Antonio Gutierrez-De La Cruz and Ramiro Casillas-Sanchez are individuals who live in Mexico.  For several years, Plaintiffs worked in Texas under the federal visa program for foreign agricultural workers known as "H-2A."  *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a).  Defendants are individuals and businesses who disregarded the federal immigration laws that govern employment of H-2A workers, including requirements as to wages, working conditions, work types, and work sites.  Although Defendants repeatedly swore to the federal government that Plaintiffs would perform sheep shearing and cattle work at specific locations and would be paid a specific hourly rate, Defendants assigned little shearing and cattle work, and instead mostly required Plaintiffs to construct fences and maintain oilfields throughout West Texas.  Defendants required Plaintiffs to work about 12 hours each day, seven days each week, and paid them only $70.00 per day, far below the promised hourly rate.  Defendants exploited Plaintiffs as part of a massive visa fraud and wage theft scheme spanning over a decade

1

and affecting hundreds of foreign workers, thousands of U.S. workers, and dozens of U.S. businesses.  Plaintiffs seek damages for numerous breaches of contract, violations of the Fair Labor Standards Act ("FLSA"), and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

**JURISDICTION AND VENUE**

2.      This court has jurisdiction over this action pursuant to:

      a.  28 U.S.C. § 1331 (Federal Question);

      b.  28 U.S.C. § 1337 (Interstate Commerce);

      c.  28 U.S.C. § 1367(a) (Supplemental Jurisdiction);

      d.  29 U.S.C. § 216(b) (FLSA); and

      e.  18 U.S.C. § 1965 (RICO).

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).

**PARTIES**

4.      Plaintiff Moises Antonio Gutierrez-De La Cruz ("Mr. Gutierrez") is an individual who is domiciled in Acuña, Coahuila, Mexico.

5.      Plaintiff Ramiro Casillas-Sanchez ("Mr. Casillas") is an individual who is domiciled near Municipio de Jimenez, Coahuila, Mexico.

6.      Defendant Felix Venegas, Sr. ("Felix Sr."), is an individual who is domiciled in Ozona, Texas, and who does business under the names "Felix Venegas Shearing," "Venegas Shearing," "Star Ranch," "Venegas Fencing," "Felix Venegas Fencing," "Vision Exploration," and "Disposal Tejas," among others.  He may be served with process at 6202 Farm Road 2083, Ozona, Texas 76943.

7.      Defendant Felix Venegas, Jr. ("Felix Jr."), is an individual who is domiciled in

2

Ozona, Texas, and is the son of Defendant Felix Venegas, Sr.  He does business under the names "Vision Exploration" and "Disposal Tejas," among others.  He may be served with process at 6202 Farm Road 2083, Ozona, Texas 76943.

8.     Defendant Genesis Venegas Salmon ("Ms. Salmon") is an individual who is domiciled in San Angelo, Texas, and is the niece of Defendant Felix Venegas, Sr.  She may be served with process at 1018 Ashford Drive, San Angelo, Texas 76901.

9.     Defendant Venegas Construction, LLC ("Venegas Construction"), is a privately held limited liability company established under the laws of Texas, whose registered agent is Albert C. Elliot and who may be served with process at 213 E. Main St., Sonora, Texas 76950.

## FEDERAL LAWS GOVERNING ACCESS TO FOREIGN LABOR

10.     Federal law prescribes the terms under which foreign nationals may enter the United States to work, and what work they may lawfully perform while they are here.

### *H-2A Agricultural Visa Program*

11.     The Immigration and Nationality Act ("INA") authorizes our nation's current visa program for agricultural workers, which is commonly known as "the H-2A program" because the statutory provision creating this visa category is codified in 8 U.S.C. § 1101(a)(15)(H)(ii)(a).

12.     The regulations implementing the H-2A program appear in 20 C.F.R. §§ 655.100 to 655.235 (Chapter 655, Subpart B).

13.     Congress stated two fundamental goals for the H-2A program: (1) to employ workers who are U.S. citizens or permanent residents rather than foreign workers whenever possible; and (2) to prevent foreign workers from adversely affecting the wages and working conditions of U.S. workers.  8 U.S.C. § 1188(a)(1)(A)-(B).

14.     Employers who seek H-2A workers apply by filing two forms with the U.S. Department of Labor ("DOL"): (a) DOL Form ETA-790, also known as a "Clearance Order" and described in  20 C.F.R. §§ 655.121 and 655.130; and (b) DOL Form ETA-9142, an "Application for Temporary Employment Certification."

15.     Forms ETA-790 and ETA-9142 both set forth the terms of employment— including wages, term of employment, type of work, site of work, housing, transportation, workers' compensation coverage, and other job conditions—that the applicant employer must offer to all workers for the specific job described in each application, regardless of whether the workers who accept the job are U.S. or foreign workers.  *See* 20 C.F.R. §§ 655.103 and 655.122.

16.     To file an H-2A application, each employer must sign a declaration under "penalty of perjury" stating "that I have read and reviewed this application and that to the best of my knowledge the information contained therein is true and accurate," and any attempt "to aid, abet, or counsel" anyone in submitting any false information in this application is a felony.  *Id.*

17.     The contents of each H-2A clearance order is combined with H-2A regulations so that together, they both state the terms of the contract between each H-2A employer and worker. 20 C.F.R. § 655.122(q).

18.     As a part of each job offer to H-2A workers, employers must provide a written promise to comply with all applicable federal, state, and local employment-related laws and regulations, including the FLSA.  20 C.F.R. § 655.135(e).

19.     H-2A employers must pay a wage that is the highest of: (a) the annual weighted average hourly wage rate for field and livestock workers in the employer's region (known as the "adverse effect wage rate" or "AEWR") in effect at the time the work is performed; (b) the

prevailing hourly wage or piece rate; or (c) the Federal or State minimum wage.  20 C.F.R. §§ 655.103(b), 655.120(a), and 655.122(*l*).

20.      The federal minimum wage and the Texas state minimum wage are both $7.25 per hour.  29 U.S.C. § 206(a)(1); TEX. LAB. CODE § 62.051.

21.      The federal overtime wage, which must be paid to covered, nonexempt employees for all hours that they work in excess of 40 each workweek, is one and one-half times the regular rate of pay.  29 U.S.C. § 207.

22.      H-2A employers must pay each worker transportation and subsistence expenses necessary for the worker to travel from the worker's home at the start of each H-2A work period, and to the worker's home upon completion of each H-2A work period.  20 C.F.R. § 655.122(h).

23.      H-2A employers are prohibited from requiring H-2A workers to pay kickbacks, recruiting fees, and other costs related to obtaining H-2A visas. 8 C.F.R. § 214.2(h)(5)(xi)(A), 20 C.F.R. §§ 655.122(p)(2) and 655.135(j), and 29 C.F.R. § 531.35.

24.      Before an employer may apply to DOL for certification, the employer must demonstrate that insufficient U.S. workers are available for the specific temporary jobs that the employer intends the workers to fill at the time and place of intended employment, and for the specific term and conditions of employment that the employer intends to offer.  8 U.S.C. § 1188(a)(1)(A)-(B).

25.      If DOL agrees that insufficient U.S. workers are available to fill the job described in the application and clearance order, and the employment terms stated in these documents are sufficient to avoid an adverse effect on U.S. workers, DOL certifies this fact to U.S. Citizenship and Immigration Services ("USCIS") for issuance of H-2A visas. 8 C.F.R. § 214.2(h)(2)(i).

26.     As part of DOL's certification process, DOL determines whether the job that the employer seeks to fill is in fact agricultural.   8 C.F.R. § 214.2(h)(5)(ii).

27.     Employers are not allowed to assign non-agricultural work to H-2A workers.  H-2A visas are only available for agricultural work, as defined in 8 U.S.C. § 1101(a)(15)(H)(ii)(a) and 20 C.F.R. § 655.103(c).

**H-2B Non-Agricultural Visa Program**

28.     Employers who seek to assign non-agricultural work to foreign workers must use the H-2B visa program, which Congress created with the same objectives as H-2A using procedures that are similar to H-2A.  See 8 U.S.C. §§ 1101(a)(15)(H)(ii)(b), 1188(a)(1)(A)-(B); 20 C.F.R. §§ 655.1 to 655.73 (Chapter 655, Subpart A).

29.     Federal law requires employers to pay H-2B workers the prevailing wage—the average wage paid to similarly employed workers in the area of intended employment—for the specific non-agricultural job and locale where the work is performed.  *See* 20 C.F.R. §§ 655.10(a), 655.20, 655.51.

30.     The prevailing wage is in most cases significantly higher than the AEWR.

31.     The H-2B visa program has a statutory cap that allows a maximum of 66,000 non-agricultural workers into the U.S. per fiscal year.  8 U.S.C. § 1184(g)(1)(B).  The H-2A visa program has no such cap.  *Id.*

**Uniform Employer Obligation**

32.     Federal law requires all employers to verify that all employees are lawfully present in the United States and lawfully permitted to be employed in the manner that the employer directs.  8 U.S.C. §§ 1324a(a) and 1324a(h)(3).

## STATEMENT OF FACTS

33.     At all times relevant to this action, Defendant Felix Sr. owned, directed, and exercised operational control over Defendant Venegas Construction and the following unincorporated entities under whose names he does business: "Felix Venegas Shearing," "Venegas Shearing," "Star Ranch," "Venegas Fencing," "Felix Venegas Fencing," "Vision Exploration," and "Disposal Tejas."

34.     At all times relevant to this action, Defendant Felix Jr. owned, directed, and exercised operational control over Defendant Venegas Construction and the following unincorporated entities under whose names he does business: "Vision Exploration" and "Disposal Tejas."

35.     The "Employer Defendants" include Felix Sr., Felix Jr., and all businesses that they own and operate.

36.     The Employer Defendants all sell labor and services to other businesses throughout West Texas.  The labor and services that they sell include sheep shearing, fence construction, and oilfield maintenance.

37.     The operational control that Felix Sr. and Felix Jr. exercise over the Employer Defendants includes control over:

      a.   the recruitment, hiring, firing, and disciplining of all employees;

      b.   the terms and conditions of all employees' work, including their hours, type of work, place of work, and pay rates; and

      c.   which records concerning employees are created and maintained, and how those records are stored.

38.     Every year between 2008 and 2019, Defendant Felix Sr. and Defendant Genesis

Salmon acted together to file one or more H-2A applications (Forms ETA-9142 and ETA-790) with DOL in which they petitioned for DOL's permission to import foreign H-2A workers ("the Applications").

39.     The Applications include without limitation:

a.     Clearance Order TX-6513473 filed in December 2016, in which Felix Sr. and Ms. Salmon sought 12 H-2A workers to help raise cattle exclusively at Star Ranch, located at 5955 FM 2083, Ozona Texas 76943 between January 23 and November 23, 2017;

b.     Clearance Order TX-5276693 filed in December 2017, in which Felix Sr. and Ms. Salmon sought 12 H-2A workers to help raise cattle exclusively at Star Ranch, located at 5955 FM 2083, Ozona Texas 76943 between February 5 and December 5, 2018;

c.     Clearance Order TX-3519112 filed in November 2017, in which Felix Sr. and Ms. Salmon sought 14 H-2A workers to shear sheep and gather wool for Felix Venegas Shearing at various specific locations near Ozona, Texas between December 4, 2017 and October 18, 2018; and

d.     Clearance Order No. TX-8695742 filed in December 2018, in which Felix Sr. and Ms. Salmon sought 14 H-2A workers to shear sheep and gather wool for Felix Venegas Shearing at various specific locations near Ozona, Texas between January 28 and October 28, 2019.

40.     In each Application, Defendants Felix Sr. and Ms. Salmon swore to DOL under penalty of perjury that Defendant Felix Sr. would offer employment to laborers on terms that

comply with all H-2A regulations, including pay at the hourly rate specified by 20 C.F.R. §§ 655.103(b), 655.120(a), and 655.122(*l*).

41.     Defendants Felix Sr. and Ms. Salmon signed all of the Applications and swore under penalty of perjury that all terms and conditions of employment contained in them were accurate.

42.     In reliance on these sworn representations, DOL approved all of the Applications.

43.     DOL's approval of each Application caused the U.S. Department of Homeland Security to allow Felix Sr. to choose workers who would receive H-2A visas to enter the U.S. to perform the work specified on that Application.

***Defendants' Treatment of Mr. Gutierrez***

44.     In 2017, 2018, and 2019, Defendant Felix Sr. and his agents recruited Mr. Gutierrez to work for Felix Sr. and Felix Jr. in Texas.

45.     The federal government issued Mr. Gutierrez's H-2A visa for 2017 (attached as Exhibit A-1) to authorize Mr. Gutierrez to enter the United States only for the purpose of performing the work specified in Clearance Order TX-6513473.

46.     The federal government issued Mr. Gutierrez's H-2A visa for 2018 (attached as Exhibit A-2) to authorize Mr. Gutierrez to enter the United States only for the purpose of performing the work specified in Clearance Order TX-5276693.

47.     The federal government issued Mr. Gutierrez's H-2A visa for 2019 (attached as Exhibit A-3) to authorize Mr. Gutierrez to enter the United States only for the purpose of performing the work specified in Clearance Order TX-8695742.

48.     Each clearance order that led USCIS to issue an H-2A visa to Mr. Gutierrez, including the visas attached as Exhibit A, stated the terms of an employment contract between

9

Mr. Gutierrez and each Employer Defendant, including:

      a.  hourly pay at the highest of the AEWR, the prevailing wage for the work performed, the wage guaranteed by a collective bargaining agreement, or the minimum wage required by federal or Texas law;

      b.  employment in compliance with all relevant employment laws, including the FLSA;

      c.  an anticipated 40-hour work week;

      d.  no charge for visa application expenses; and

      e.  reimbursement for Mr. Gutierrez's travel expenses.

49.    The AEWR in Texas for each relevant calendar year was:

      a.  $11.59 for 2017;

      b.  $11.87 for 2018; and

      c.  $12.23 for 2019.

*See* 20 C.F.R. § 655.120(c); https://www.foreignlaborcert.doleta.gov/adverse.cfm.

50.    In each of calendar years 2017, 2018, and 2019, Mr. Gutierrez:

      a.  accepted the offer to work for Defendants under the visas attached as Exhibit A;

      b.  entered the United States under his H-2A visas to work exclusively for Defendants; and

      c.  performed all work assigned to him by Defendants.

51.    At all times relevant to this action, Mr. Gutierrez was an "employee" of Defendants Felix Sr., Felix Jr., and Venegas Construction, LLC within the meaning of the FLSA, 29 U.S.C. § 203(d).

52.     During the visa periods stated on the visas attached as Exhibit A, every one of the Employer Defendants acted as Mr. Gutierrez's joint employer for purposes of the FLSA, 29 U.S.C. § 203(g), and the common law because:

   a.   the services rendered by Mr. Gutierrez were a central part of each Employer Defendant's business;

   b.   Mr. Gutierrez's employment simultaneously benefitted each Employer Defendant;

   c.   the Employer Defendants contracted to supply fencing services to ranchers and others using the name "Venegas," collectively and without distinguishing among themselves;

   d.   all Employer Defendants fulfilled their fencing contracts with ranchers using a pool of labor shared among all Employer Defendants;

   e.   the Employer Defendants billed their fencing clients variously as "Felix Venegas. Shearing," "Venegas Construction, LLC," "Venegas Fencing," and various other names under which Felix Sr. does business individually;

   f.   each Employer Defendant held and exercised significant control over Mr. Gutierrez's work; and

   g.   Mr. Gutierrez worked exclusively for the Employer Defendants.

53.     Mr. Gutierrez fulfilled all promises he made in each of his employment contracts by working as assigned by Defendants.

54.     Mr. Gutierrez performed the work assigned by Defendants during all relevant times, which include the entire term of employment specified in the visas attached as Exhibit A. After expiration of each visa period, Mr. Gutierrez worked approximately ten additional days as

11

directed by Defendants.

55.     At all times relevant to this action, all Defendants required Mr. Gutierrez to perform work that was outside the scope of the work described in each Application.

56.     During the visa periods stated in Exhibit A, Defendants assigned Mr. Gutierrez no cattle work and only about two months of sheep shearing work each year.

57.     Rather than assign Mr. Gutierrez the cattle and sheep shearing work on Star Ranch that is specified in the Applications, the Employer Defendants mostly assigned Mr. Gutierrez to perform the following work: (a) construct fences throughout West Texas; and (b) perform labor for oilfield services companies on their premises.

58.     The fence construction and oilfield work that the Employer Defendants assigned to Mr. Gutierrez is not "agricultural" under 20 C.F.R. § 655.103(c).

59.     Each Defendant benefited from Mr. Gutierrez's labor.

60.     At all times relevant to this action, Defendants paid Mr. Gutierrez for all of his work via paychecks issued by "Felix Venegas Shearing Payroll Account."

61.     At all times relevant to this action, the Employer Defendants ordered Mr. Gutierrez to perform work for approximately 84 hours per week, assigning him an average of over 12 hours per day seven days per week in all weeks in which Mr. Gutierrez was not granted days off.

62.     At all times relevant to this action, the Employer Defendants permitted Mr. Gutierrez to take an average of two days off from work every month, for which Defendants did not pay Mr. Gutierrez.

63.     The Employer Defendants assigned Mr. Gutierrez to work, and Mr. Gutierrez did work, at least 72 hours per week, and usually 84 hours per week, during the entire term of each

of his H-2A visas and, in both 2017 and 2018, approximately ten additional days after the expiration of each visa term.  In 2019, Mr. Gutierrez ceased work on or about September 30, 2019, approximately one month before the end of his visa term.

64.     At all times relevant to this action, Defendants failed to record the number of hours that Mr. Gutierrez worked each day.

65.     At all times relevant to this action, Defendants paid Mr. Gutierrez a flat rate of seventy dollars for each day that Mr. Gutierrez worked.

66.     Defendants paid Mr. Gutierrez an effective hourly rate that was less than the federal and Texas state minimum wage of $7.25 per hour.

67.     Although Mr. Gutierrez worked over 40 hours during every workweek at issue in this action, Defendants never paid Mr. Gutierrez the overtime premium required by the FLSA for any hours that he worked over 40 in any workweek.

68.     To the extent that the Employer Defendants did keep and maintain payroll records for the work performed by Mr. Gutierrez, those records are inaccurate because they do not show the actual number of hours that Mr. Gutierrez worked each day.

69.     Defendants failed to provide Mr. Gutierrez with accurate earnings statements as required by H-2A regulations.

70.     As a result of Defendants' improper pay practices, Defendants routinely paid Mr. Gutierrez an effective hourly wage rate that was less than the hourly wage rate promised on the applicable clearance order and incorporated into Mr. Gutierrez's H-2A employment contracts, less than any wage rate stated on his earning statements, and less than the minimum prevailing wage rates required for all hours that Mr. Gutierrez worked.

71.     At all times relevant to this action, the highest effective wage rate for the work

actually performed by Mr. Gutierrez was the applicable prevailing wage, which was roughly $20.00 per hour for oilfield roustabout work.

72.     The oilfield work that Mr. Gutierrez performed for Defendants falls under the Bureau of Labor Statistics Standard Occupational Classification ("SOC") code 47-5071, which DOL determined to have the following prevailing wages for Crockett County, Texas:

      a.  $16.53 from July 2016 through June 2017;

      b.  $16.64 from July 2017 through June 2018;

      c.  $16.56 from July 2018 through June 2019; and

      d.  $17.54 from July 2019 through June 2020.

See https://flcdatacenter.com/Download.aspx.

73.     Each year that Mr. Gutierrez entered the United States under a visa that appears in Exhibit A, Defendants failed to reimburse Mr. Gutierrez for his full transportation and subsistence costs from the point of his recruitment in Mexico to his place of work in the United States and back to Mexico upon completion of each visa period.

74.     Each year that Mr. Gutierrez entered the United States under a visa that appears in Exhibit A, Defendants breached their employment contracts with Mr. Gutierrez by charging Mr. Gutierrez $1,000 for the visa processing services of Ms. Salmon. Defendants collected these charges by deducting money from Mr. Gutierrez's pay.

***Defendants' Treatment of Mr. Casillas***

75.     In 2017, Defendant Felix Sr. and his agents recruited Mr. Casillas to work for Felix Sr. and Felix Jr. in Texas.

76.     The federal government issued Mr. Casillas's H-2A visa for 2017-2018 (attached as Exhibit B) to authorize Mr. Casillas to enter the United States only for the purpose of performing the work specified in Clearance Order TX-3519112.

14

77.    Each clearance order that led USCIS to issue an H-2A visa to Mr. Casillas, including the visa attached as Exhibit B, stated the terms of an employment contract between Mr. Casillas and each Employer Defendant, including:

      a.   hourly pay at the highest of the AEWR, the prevailing wage for the work performed, the wage guaranteed by a collective bargaining agreement, or the minimum wage required by federal or Texas law;

      b.   employment in compliance with all relevant employment laws, including the FLSA;

      c.   an anticipated 40-hour work week;

      d.   no charge for visa application expenses; and

      e.   reimbursement for Mr. Casillas's for his travel expenses.

78.    In calendar years 2017 and 2018, Mr. Casillas:

      a.   accepted the offer to work for Defendants under the visa attached as Exhibit B;

      b.   entered the United States under his H-2A visa to work exclusively for Defendants; and

      c.   performed all work assigned to him by Defendants.

79.    At all times relevant to this action, Mr. Casillas was an "employee" of Defendants Felix Sr., Felix Jr., and Venegas Construction, LLC within the meaning of the FLSA, 29 U.S.C. § 203(d).

80.    During the visa period stated on the visa attached as Exhibit B, every one of the Employer Defendants acted as Mr. Casillas's joint employer for purposes of the FLSA, 29 U.S.C. § 203(g), and the common law because:

a.  the services rendered by Mr. Casillas were a central part of each Employer Defendant's business;

b.  Mr. Casillas's employment simultaneously benefitted each Employer Defendant;

c.  the Employer Defendants contracted to supply fencing services to ranchers and others using the name "Venegas," collectively and without distinguishing among themselves;

d.  all Employer Defendants fulfilled their fencing contracts with ranchers using a pool of labor shared among all Employer Defendants;

e.  the Employer Defendants billed their fencing clients variously as "Felix Venegas. Shearing," "Venegas Construction, LLC," "Venegas Fencing," and various other names under which Felix Sr. does business individually;

f.  each Employer Defendant held and exercised significant control over Mr. Casillas's work; and

g.  Mr. Casillas worked exclusively for the Employer Defendants.

81.     Mr. Casillas fulfilled all promises he made in his employment contract by working as assigned by the Employer Defendants.

82.     Mr. Casillas performed the work assigned by Defendants during all relevant times, which include the entire term of employment specified in the visa attached as Exhibit B, and approximately ten additional days after the visa term as directed by the Employer Defendants.

83.     At all times relevant to this action, the Employer Defendants required Mr. Casillas to perform work that was outside the scope of the work described in Clearance Order TX-

16

3519112.

84.     During the visa period stated in Exhibit B, the Employer Defendants assigned Mr. Casillas no sheep shearing work at all.

85.     Rather than assign Mr. Casillas the sheep shearing work in Texas that is described in Clearance Order TX- 3519112, the Employer Defendants assigned Mr. Casillas to perform the following work: (a) construct fences at ranches throughout West Texas; and (b) perform labor for oilfield services companies.

86.     The fence construction and oilfield work that the Employer Defendants assigned to Mr. Casillas is not "agricultural" under 20 C.F.R. § 655.103(c).

87.     Each Employer Defendant benefited from Mr. Casillas's labor.

88.     At all times relevant to this action, Defendants paid Mr. Casillas for all of his work via paychecks issued by "Felix Venegas Shearing Payroll Account."

89.     At all times relevant to this action, the Employer Defendants ordered Mr. Casillas to perform work for approximately 84 hours per week, assigning him an average of over 12 hours per day seven days per week in all weeks in which Mr. Casillas was not granted days off.

90.     At all times relevant to this action, the Employer Defendants permitted Mr. Casillas to take an average of two days off from work every month, for which Defendants did not pay Mr. Casillas.

91.     The Employer Defendants assigned Mr. Casillas to work, and Mr. Casillas did work, at least 72 hours per week, and usually 84 hours per week, during the entire term of his H-2A visa, and approximately ten additional days after the expiration of the visa term.

92.     At all times relevant to this action, Defendants failed to record the number of hours that Mr. Casillas worked each day.

17

93.     At all times relevant to this action, Defendants paid Mr. Casillas a flat rate of seventy dollars for each day that Mr. Casillas worked.

94.     Defendants paid Mr. Casillas an effective hourly rate that was less than the federal and Texas state minimum wage of $7.25 per hour.

95.     Although Mr. Casillas worked over 40 hours during every workweek at issue in this action, Defendants never paid Mr. Casillas the overtime premium required by the FLSA for any hours that he worked over 40 in any workweek.

96.     To the extent that Defendants did keep and maintain payroll records for the work performed by Mr. Casillas, those records are inaccurate because they do not show the actual number of hours that Mr. Casillas worked each day.

97.     Defendants failed to provide Mr. Casillas with accurate earnings statements as required by H-2A regulations.

98.     As a result of Defendants' improper pay practices, Defendants routinely paid Mr. Casillas an effective hourly wage rate that was less than the hourly wage rate promised on the applicable clearance order and incorporated into Mr. Casillas's H-2A employment contract, less than any wage rate stated on his earning statements, and less than the minimum prevailing wage rates required for all hours that Mr. Casillas worked.

99.     At all times relevant to this action, the highest effective wage rate for the work actually performed by Mr. Casillas was the applicable prevailing wage, which was roughly $20.00 per hour for oilfield roustabout work.

100.    The oilfield work that Mr. Casillas performed for Defendants falls under the Bureau of Labor Statistics Standard Occupational Classification ("SOC") code 47-5071, which DOL determined to have the following prevailing wages for Crockett County, Texas:

    a.   $16.64 from July 2017 through June 2018; and

    b.   $16.56 from July 2018 through June 2019.

*See* https://flcdatacenter.com/Download.aspx.

101.    After Mr. Casillas entered the United States under the visa that appears in Exhibit B, Defendants failed to reimburse Mr. Casillas for his full transportation and subsistence costs from the point of his recruitment in Mexico to his place of work in the United States and back to Mexico upon completion of the visa period stated in Exhibit B

102.    After Mr. Casillas entered the United States under the visa that appears in Exhibit B, Defendants breached their employment contract with Mr. Casillas by charging Mr. Casillas $1,000 for the visa processing services of Ms. Salmon.  Defendants collected these charges by deducting money from Mr. Casillas's pay.

## CAUSES OF ACTION

103.    To support each of the following causes of action, Plaintiffs incorporate by reference all paragraphs in the preceding Statement of Facts, and pursuant to Rule 10(c), all information that appears in attached Exhibits A through D.

## COUNT I: FAIR LABOR STANDARDS ACT

104.    This count sets forth a claim for declaratory relief and damages for each Employer Defendant's violations of the FLSA's minimum wage and overtime requirements.

105.    All Employer Defendants constitute an "enterprise" within the meaning of 29 U.S.C. § 203(r)(1) because they: (a) are engaged in related activities, namely contracting to perform ranching and oilfield services to businesses in West Texas; (b) all are owned, operated, and controlled by Defendants Felix Sr. and Felix Jr.; and (c) share a common business purpose, namely reaping financial gain by contracting labor to perform services in West Texas.

106.    All Employer Defendants are an enterprise engaged in commerce or in the

production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1) because they: (a) have at least two employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce, namely wool, machinery, and fencing materials; and (b) have a combined annual gross volume of business that exceeds $500,000, exclusive of excise taxes, based in part on the number of H-2A workers that they consistently import each year, and the required salaries for these workers.

107.    During all periods of employment listed in all three visas attached as Exhibit A, and the approximately ten additional days of work assigned by Defendants after each visa period:

      a.   the Employer Defendants all employed Mr. Gutierrez;

      b.   Mr. Gutierrez performed approximately 84 hours of work per workweek that is covered by the FLSA;

      c.   the Employer Defendants did not record the number of hours that Mr. Gutierrez actually worked;

      d.   the Employer Defendants did not pay Mr. Gutierrez based on the number of hours that Mr. Gutierrez actually worked;

      e.   the regular rate of pay due to Mr. Gutierrez was the AEWR for ranch fencing and shearing work, and the prevailing wage of roughly $20 per hour for oilfield work as detailed above;

      f.   the Employer Defendants failed to pay Mr. Gutierrez at least the minimum wage for all hours that he worked; and

      g.   the Employer Defendants failed to pay Mr. Gutierrez the required overtime wages for all hours that he worked over 40 during each workweek.

108.    During the period of employment listed in the visa attached as Exhibit B, and the

approximately ten additional days of work assigned by Defendants after this period:

    a.  the Employer Defendants all employed Mr. Casillas;

    b.  Mr. Casillas performed approximately 84 hours of work per workweek that is covered by the FLSA;

    c.  the Employer Defendants did not record the number of hours that Mr. Casillas actually worked;

    d.  the Employer Defendants did not pay Mr. Casillas based on the number of hours that Mr. Gutierrez actually worked;

    e.  the regular rate of pay due to Mr. Casillas was the AEWR for ranch fencing work, and the prevailing wage of roughly $20 per hour for oilfield work as detailed above;

    f.  the Employer Defendants failed to pay Mr. Casillas at least the minimum wage for all hours that he worked; and

    g.  the Employer Defendants failed to pay Mr. Casillas the required overtime wages for all hours that he worked over 40 during each workweek.

109.    The Employer Defendants failed to maintain complete and accurate records of the hours worked by and compensation paid to Messrs. Gutierrez and Casillas as required by the FLSA.

110.    The Employer Defendants' failure to pay Messrs. Gutierrez and Casillas the minimum and overtime wages required by the FLSA were a willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a), based in part on the obviousness of the violations, the creation of false time records, the repeated false written assurances made by Defendant Felix Sr. related to participation in the H-2A program, the longstanding and repeated nature of the

21

violations, and Defendants' failure to display any poster or other document describing FLSA rights in Spanish in any place where Plaintiffs could see it.

111.    For these violations, Plaintiffs are entitled to recover their unpaid minimum and overtime wages, an equal amount in liquidated damages, attorney's fees, and costs of court, pursuant to 29 U.S.C. § 216(b), and a declaration that individually and collectively the Employer Defendants willfully violated the FLSA's minimum wage and overtime requirements.

112.    Plaintiffs' FLSA consent forms are attached as Exhibit C.

### COUNT II.  BREACH OF CONTRACT

113.    This count sets forth a claim for damages for the Employer Defendant's breaches of their H-2A contracts contained in the Applications.

114.    The DOL-approved Applications for Temporary Employment Certification and Clearance Orders that the Employer Defendants submitted to obtain H-2A visas for Plaintiffs (ETA Forms 790 and 9142A), including all applicable regulatory requirements, were incorporated by law into the contracts between the Employer Defendants on the one hand and Plaintiffs as their employees on the other, with enforceable terms and conditions of employment, including an enforceable guarantee of wages no less than the applicable prevailing wage.

115.    Mr. Gutierrez satisfactorily performed all employment duties and responsibilities required of him under each of his three employment contracts with the Employer Defendants.

116.    Mr. Casillas satisfactorily performed all employment duties and responsibilities required of him under his employment contract with the Employer Defendants.

117.    Defendants breached each of their employment contracts with each Plaintiff by failing to comply with the terms and conditions of the contracts, including those terms relating to hours, records, pay, work type, earnings statements, FLSA compliance, wage rate at the

prevailing wage rate, and reimbursement for travel and related costs.

118.     Plaintiffs are entitled to recover their damages for Defendants' breaches pursuant to Texas common law and reasonable attorney's fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.

## COUNT III.  QUANTUM MERUIT

119.     Only to the extent that Counts I and II do not permit recovery of all damages suffered by Plaintiffs, this count sets forth a claim for damages in quantum meruit.

120.     The Employer Defendants directed each Plaintiff to perform services.

121.     Each Plaintiff performed valuable services for the Employer Defendants.

122.     The Employer Defendants accepted the benefit of each Plaintiff's services under circumstances that reasonably notified the Employer Defendants that each Plaintiff expected compensation for his services.

123.     The Employer Defendants knew that Plaintiffs expected compensation for their services.

124.     The above-described actions unjustly enriched the Employer Defendants.

125.     Plaintiffs are entitled to compensation at the lawfully required wage applicable to the work that each Plaintiff performed, *i.e.*, the appropriate prevailing wage in effect at the time, pursuant to Texas's common law of quantum meruit.

126.     Plaintiffs are further entitled to reasonable attorney's fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.

## COUNT IV.  RICO ENTERPRISE

127.     Each Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3) because each is capable of holding legal interests in property, and does hold legal interests in

property, including property recorded in Crockett and Tom Green counties and UCC filings.

128.   Defendants operated two distinct enterprises as follows:

a. Felix Sr. and Felix Jr., formed, are associated with, and operate an enterprise as defined in 18 U.S.C. § 1961(4) that is comprised of themselves in combination with Defendant Venegas Construction, LLC, which they owned and controlled at all relevant times; and

b. all Defendants, together with one another and numerous additional Venegas family members and businesses that the Venegas family own and operate throughout West Texas, formed, are associated with, and operate an association-in-fact enterprise as defined in 18 U.S.C. § 1961(4).

129.   Both enterprises alleged in the previous two paragraphs affect interstate and foreign commerce by:

a. acquiring foreign workers from Mexico to perform labor in the United States;

b. supplying domestic and foreign labor in several states, including Texas, New Mexico, and Wyoming; and

c. supplying labor to help produce oil, natural gas, livestock, wool, meat, and dairy products, all of which are commodities that are sold in interstate commerce.

130.   A common purpose of all Defendants and both enterprises is to recruit and sell for profit the labor of U.S. and foreign workers in the ranch fencing, livestock shearing, cattle-raising, and oil-and-gas industries.

131.   All Defendants conspired, agreed, and acted to increase the enterprises' profits by unlawfully reducing the Employer Defendants' labor costs through misuse of the H-2A visa

program.

132.    All Defendants conspired, agreed, and acted to submit a series of H-2A visa applications to DOL, under which they employ H-2A workers in agricultural work (including cattle work and sheep shearing), and non-agricultural work (including commercial fence construction, welding, and oil and gas work), under undisclosed terms and conditions that are unlawful, and that are materially less beneficial to workers than the sworn commitments that they make in their H-2A applications.

133.    The Venegas family's association-in-fact enterprise has operated continuously under essentially the same structure since at least 2008:

   a.   Felix Sr.'s older brother Fermin Venegas operates cattle ranching, shearing, fence construction, and petroleum labor contracting businesses in Pecos County, Texas;

   b.   Felix Sr. operates cattle ranching, sheep shearing, fence construction, and petroleum labor contracting businesses in Crockett County, Texas;

   c.   Genesis Venegas Salmon acts as agent for both Fermin Venegas (her father) and Felix Venegas, Sr. (her uncle), in writing and submitting four substantially similar and overlapping H-2A applications every year, namely—

      i.   an application filed by Fermin Venegas and Fermin Venegas Shearing, Inc., for a visa term of roughly mid-November to mid-September;

      ii.  an application filed by Fermin Venegas dba Pecos Crossing for a visa term of roughly mid-January through mid-November;

      iii. an application filed by Felix Venegas, Sr., dba Felix Venegas Shearing for a visa term of roughly October through August; and

iv.  an application filed by Felix Venegas, Sr., dba Star Ranch for a visa term
of roughly mid-January through mid-November.

d.  the workers brought into the U.S. under the visas obtained through the
applications described in the preceding subparagraph are assigned to work for
various businesses owned and operated by members of the Venegas family;

e.  Fermin Venegas and Felix Sr. require all of their workers to sign identical
"Beginning Work" contracts and "Completion Work" contracts (examples
attached as Exhibit D) that were drafted by Defendant Genesis Venegas
Salmon, and that purport to document the terms of work and the workers'
satisfaction with their pay; and

f.  Venegas family members who are associated with the Venegas family
enterprise because they own or operate businesses with Defendants, or benefit
directly or indirectly from Defendants' fraudulent H-2A contracting activity,
include Rocky Venegas, Jesse Venegas, Jorge Luis Venegas, Juan Pablo
Venegas, and Lisa Odom Venegas.

134.    All Defendants agreed to and did conduct and participate in the conduct of the
enterprises' affairs through a pattern of racketeering activity and for the unlawful purpose of
exploiting foreign laborers for their own financial gain in violation of 18 U.S.C. § 1546,
specifically by making numerous statements to the federal government that they knew or should
have known were false, and making these false statements dozens of times over a decade for the
purpose of fraudulently obtaining hundreds of H-2A visas, and using these visas to satisfy
employment verification requirements knowing the visas to be fraudulently obtained.

135.    Pursuant to and in furtherance of their common fraudulent scheme, all

Defendants committed hundreds of acts of visa fraud over the course of at least a decade, in violation of 18 U.S.C. § 1546, which constitute a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5).

136.    Each Defendant knew or should have known that Felix Sr. uses his shearing and cattle work as a pretense to obtain H-2A workers, who he then assigns to help construct ranch fences and perform roustabout work through Venegas Construction.

137.    Each Defendant directly and indirectly conducted and participated in the conduct of the enterprises' affairs through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c).

138.    Defendants' numerous, ongoing acts of visa fraud, which continued even after a lawsuit challenging similar acts was filed in 2017, are related and pose a threat of continued criminal activity.

139.    Defendants' racketeering activities foreseeably, directly, and without intervening cause increased Defendants' profits at the expense of Plaintiffs' wages.

140.    Wherefore, Plaintiffs request that this Court enter judgment against each Defendant for the actual damage caused by Defendants' violations of 18 U.S.C. § 1962(c), treble damages, and attorney fees.

### COUNT V.  RICO CONSPIRACY

141.    All Defendants agreed and conspired to violate 18 U.S.C. § 1962(c) as alleged above.

142.    All Defendants shared among themselves proceeds from exploitation of laborers while all knew or should have known that H-2A laborers were only made available to the Employer Defendants due to visa fraud committed by one or more Defendants.

143.     All Defendants agreed to the commission of acts constituting visa fraud under 18 U.S.C. § 1546 to further the scheme described above, which constitutes a conspiracy to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

144.     All Defendants agreed to join the conspiracy with the knowledge of the essence or essential nature of the plan and knowingly facilitated the activities undertaken by Defendants to violate 18 U.S.C. § 1962(c).

145.     All Defendants agreed to help one another to accomplish the overall objective of their RICO conspiracy, which was financial gain, specifically to unlawfully reduce the Employer Defendants' labor costs and thus increase their business profits.

146.     One or more Defendants took overt acts in furtherance of the conspiracy as described above, and as a consequence of these acts Plaintiffs were injured in their business and property in that they were not paid the money that they were due under law for their labor.

147.     Wherefore, Plaintiffs request that this Court enter judgment against all Defendants imposing joint and several liability for the actual damages caused by Defendants' violations of l8 U.S.C. § 1962(d), treble damages, and attorney fees.

## JURY DEMAND

148.     Plaintiffs respectfully assert their right to a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

a.  declare that each Employer Defendant: (a) violated the FLSA's minimum wage, overtime, and record keeping requirements as set forth above; and (b) breached their contracts with Plaintiffs, as alleged above;

28

b.  award damages to each Plaintiff for each Employer Defendants' failure to pay minimum and overtime wages as required by the FLSA, and an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

c.  award actual, incidental, and consequential damages caused by the Employer Defendants' breaches of their contracts with each Plaintiff;

d.  award quantum meruit damages as necessary to afford Plaintiffs complete relief;

e.  declare that each Defendant (a) engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), and (b) conspired to violate RICO in violation of 18 U.S.C. § 1962(d);

f.  award each Plaintiff treble damages, for which all Defendants are jointly and severally liable, as provided by RICO, 18 U.S.C. § 1964(c);

g.  award Plaintiffs the costs of this action and reasonable attorney's fees pursuant to 29 U.S.C. § 216(b) and TEX. CIV. PRAC. & REM. CODE § 38.001;

h.  award Plaintiffs pre-judgment and post-judgment interest, as appropriate; and

i.  grant such other relief as this Court deems just and proper.

December 4, 2020                    Respectfully submitted,

Jerome Wesevich
   Texas Bar No. 21193250
   jwesevich@trla.org
TEXAS RIOGRANDE LEGAL AID, INC.
1331 Texas Avenue
El Paso, Texas 79901
T: (915) 585-5120
F: (915) 544-3789

Lexie Wiley
   Texas Bar No. 24032305
   wileyl@lanwt.org
LEGAL AID OF NORTHWEST TEXAS
17 South Chadbourne, Suite 403
San Angelo, Texas 76903
T: (325) 653-6982
F: (325) 655-9012

Christopher Willett
   Texas Bar No. 24061895
   cwillett@equaljusticecenter.org
Rebecca Eisenbrey
   Texas Bar No. 24097646
   reisenbrey@equaljusticecenter.org
EQUAL JUSTICE CENTER
510 Congress Ave., Ste. 206
Austin, Texas 78704
T: (512) 474-0007, ext. 132
F: (512) 474-0008

*Attorneys for Plaintiffs*